UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHANNON KENNERSON,
doing business as Kennerson Lawn
& Landscaping Associates,

                             Plaintiff,

                                                    DECISION AND ORDER

                                                      06-CV-6212L

                             v.

VINCENZO LABARBERA, Individually,
also known as Vince LaBarbera,
doing business as LaBarbera Excavating,
doing business as Vincenzo LaBarbera,
also known as Vincent LaBarbera, et al.,

                             Defendants.
_____

      Vincenzo LaBarbera, a/k/a Vincent LaBarbera, individually and d/b/a LaBarbera Excavating and LaBar Enterprises of Rochester, Inc., (hereinafter "LaBarbera") was the general contractor on a construction project for the Monroe County Water Authority ("Water Authority"). Plaintiff, Shannon Kennerson, d/b/a Kennerson Lawn & Landscaping Associates ("Kennerson") was engaged by LaBarbera as a subcontractor on the project. When LaBarbera failed to timely pay Kennerson for work performed, Kennerson commenced this action for labor and materials in New York State Supreme Court. The Internal Revenue Service was also named as a defendant, and it removed the action to this court.

In addition to LaBarbera, Kennerson named Selective Insurance Company of America ("the Surety") as a defendant. The Surety previously executed a performance bond on the project guaranteeing payment of labor and materials. Because LaBarbera defaulted on some of its obligations, the Surety made payments on the bond, including a $35,000 payment to Kennerson.

Pursuant to an Indemnity Agreement with LaBarbera, the Surety seeks indemnification from LaBarbera for payments that the Surety made to Kennerson on the performance bond. On its cross-claim for this relief against LaBarbera, the Surety now moves for summary judgment.

In pertinent part, the Indemnity Agreement provides as follows:

> 3.   INDEMNITY; PAYMENTS; LOANS; EVIDENCE.   The Indemnitors hereby jointly and severally covenant, promise and agree to exonerate, indemnity and save harmless Surety . . . from and against any and all liability, loss, cost, damage, and expense of whatsoever kind of nature . . . which Surety may sustain, incur be put to or to which it may be exposed (1) be reason of having executed any Bod or other instrument . . . (2) by reason of the failure of any one or more of the Indemnitors to perform or comply with the promises, covenants and conditions of this Agreement or, (3) in enforcing any of the promises, covenants of conditions of this Agreement. The liability of the Indemnitors shall extend to and include the amount of all payments, together with interest thereon at the rate of prime as published by the Wall Street Journal . . . plus two points from the date of such payments, made by Surety under Surety's belief that: (1) Surety was or might be liable therefor or (2) the payments were necessary or advisable to protect any of Surety's rights or to avoid or lessen Surety's liability or alleged liability . . . Indemnitors agree that the vouchers or other evidence of such payments sworn to by a duly authorized representative of Surety shall be *prima facie* evidence of the fact and extent of the liability of the Indemnitors to Surety.
>
> ****
>
> 7.   SETTLEMENTS AND COMPROMISES.   Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon any of the Bonds procured or executed by it and Surety's decision thereon shall be final and binding upon the Indemnitors . . .

Indemnity Agreement, Dkt. #26, Att. 2, Exh. A.

Subsequent to the execution of the bonds, the Surety received claims from several suppliers and subcontractors on the project whom LaBarbera had failed to pay. Upon investigation and verification of their claims, the Surety duly paid the suppliers and subcontractors a net sum of $99,541.90. This figure included an offset of $11,250.00, which represented part of a $38,994.96 sum received by the Surety from the construction project owner. (While the Surety affirms that the remainder of that sum was returned directly to LaBarbera in May 2003, LaBarbera disputes that allegation).

After this action was filed, the Surety repeatedly attempted to gain information from LaBarbera, through their counsel, to assist with the evaluation and defense of plaintiff's claims. The Indemnitors – specifically Mr. LaBarbera – proved to be unreachable, either by the Surety or by their own counsel. Based on review by its own attorney and its analysis of the Kennerson claims, and given the lack of any assistance from LaBarbera in responding to the claim and the fast-approaching trial date in New York State Supreme Court, where the action was venued at the time, the Surety elected to settle the Kennerson claim. Although Kennerson's claim totaled more than $41,000, the Surety negotiated a settlement of Kennerson's claim in the amount of $35,000, which was duly paid in consideration for a complete release of claims by Kennerson.

Relying on the terms of the Indemnity Agreement, the Surety now requests summary judgment against LaBarbera with respect to its second and fourth cross-claims, which respectively relate to the net loss of $80,011.47 in payment on the Labor and Materials Payment and Performance bonds, and the $35,000 settlement payment to plaintiff. The Surety further moves for summary judgment dismissing the cross-claim asserted against it by the defendant Water Authority, on the

grounds that the Water Authority is not a beneficiary under the Labor and Materials Payment and Performance bonds.

For the reasons set forth below, the Surety's motions are granted.

## DISCUSSION

**A.     The Summary Judgment Standard**

It is well settled that a motion for summary judgment should be granted only where there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. Proc. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When ruling on a motion for summary judgment, the court must construe the alleged facts in the light most favorable to the nonmovant.  *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element...necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party bears the ultimate burden of proof, it is his or her responsibility to confront the motion for summary judgment with evidence in admissible form.  *Anderson*, 477 U.S. at 256.

**B.     Indemnification for Surety's Losses Sustained as a Result of Executing the Bonds**

LaBarbera does not dispute their obligation under the Indemnity Agreement to compensate the Surety for its losses with respect to payments made to subcontractors under the Labor and Materials Payment and Performance bonds.  LaBarbera disputes only the amount that

is owed, arguing that their records do not reflect that any portion of the $38,994.96 payment made to Surety by the Water Authority was returned to them.

In response, the Surety offers the sworn statement of Gerald N. Carozza, Jr., the Assistant Vice President, Bond Counsel and Claims Manager of the Surety's Bond Department, in addition to supporting documentary evidence including correspondence and wire transfer summaries, which demonstrate that $11,250.00 of that payment was retained by the Surety and applied to LaBarbera's debts to a subcontractor, while the remainder was wired to accounts in the name of LaBarbera Excavating at Charter One Bank in Webster, New York, and LaBarbera Enterprises of Rochester, Inc., at Genesee Regional Bank in Rochester, New York.  With respect to the latter payment, the Surety has submitted a copy of correspondence from Vince LaBarbera, on LaBar Enterprises letterhead, transmitting wiring instructions and designating the account into which the payment was to be deposited.

Because LaBarbera has offered no evidence in admissible form to contradict the Surety's sworn statement and documentary proof that the Water Authority's payment to the Surety was properly applied and distributed according to LaBarbera's own instructions, I find that LaBarbera has failed to rebut the Surety's *prima facie* showing of the amount of its losses as a result of the execution of the bonds. *Anderson*, 477 U.S. at 256.  Indeed, pursuant to the terms of the Indemnity Agreement and under the relevant case law, the Surety's sworn statement of the payment amount and supporting documentation of the loss are more than sufficient to prove its entitlement to recover thereunder.  Indemnity Agreement at ¶3.  *See generally North American Specialty Ins. v. Schuler*, 291 A.D.2d 924 (4th Dept. 2002) (where indemnity agreement requires

indemnitors to indemnify surety for reasonable losses paid in good faith and surety has demonstrated such, surety is entitled to summary judgment); *American Home Assurance Co. v. Gemma Construction Company, Inc.*, 275 A.D.2d 617 (1st Dept. 2000) (indemnity agreement, along with sworn statement of loss and supporting payment drafts, is sufficient to establish a surety's entitlement to recovery).

Accordingly, the Surety's motion for summary judgment against LaBarbera on its second cross-claim in the amount of $80,011.47 is granted.

### C.     Indemnification for Surety's Settlement Payment to Kennerson

LaBarbera also does not dispute their obligation under the Indemnity Agreement to indemnify the Surety for the settlement monies paid to Kennerson.  Again, however, LaBarbera takes issue with the amount that is owed, arguing that Kennerson did not properly complete the work on the project, and was, therefore, only entitled to about $20,000.00, as opposed to the $35,000.00 paid by the Surety to settle Kennerson's $41,466.69 claim.

LaBarbera offers no evidence in support of their belated claim that Kennerson was not entitled to the settlement amount, and in any event, explicitly agreed as part of the Indemnity Agreement that, "Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon any of the Bonds procured or executed by it and Surety's decision thereon shall be final and binding upon the Indemnitors." Indemnity Agreement at ¶7.  Having agreed to be bound by the Surety's settlement determination and after refusing to assist the Surety by providing relevant information when the Surety was negotiating to settle the claim, LaBarbera has waived any and all rights to object to the settlement now.

Accordingly, the Surety's motion for summary judgment on its fourth cross-claim against LaBarbera in the amount of $35,000.00 is granted.

### E.  Surety's Motion to Dismiss the Cross-Claim of the Defendant Water Authority

The Surety has also moved to dismiss the cross-claim asserted against it by the Water Authority, on the grounds that the Water Authority is not a beneficiary under the Labor and Materials Payment and Performance bonds executed by the Surety, and therefore lacks standing to assert such a cross-claim. On their face, the bonds do not obligate the Surety to defend or indemnity the Water Authority, and the Water Authority has not opposed the Surety's motion.

Therefore, the Surety's motion for summary judgment dismissing the Water Authority's cross-claim is granted.

### CONCLUSION

In light of the foregoing, defendant Selective Insurance Company of America's motion for summary judgment against the LaBarbera codefendants, that is, Vincenzo LaBarbera, a/k/a Vincent LaBarbera, individually and d/b/a LaBarbera Excavating and LaBar Enterprises of Rochester, Inc., on its second and fourth cross-claims (Dkt. #26) is granted in the total amount of $115,011.47, with interest to be calculated on $80,011.47 of that amount pursuant to the terms of the Indemnity Agreement between those parties. Selective's motion to dismiss the cross-claim asserted against it by codefendant the Monroe County Water Authority is also granted, and that cross-claim is dismissed, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       March 11, 2008.